McCleary *v.* Edwards.

---

## McCLEARY *vs.* EDWARDS.

It is no objection to receiving in evidence a deposition taken on a commission, that the return to the commission is indorsed upon the interrogatories, which, together with the deposition, are annexed and secured to the commission.

By an instrument in writing dated Nov. 27, 1852, the defendant, for a rent of $2000 paid to him in advance, leased to the plaintiff the two bars or saloons on the steamers Southern Michigan and Northern Indiana, "for the season of navigation of 1853." By another instrument of the same date, the defendant, in consideration of the promissory note of the plaintiff, for $2000, payable March 1, 1853, agreed to lease to the plaintiff the two bars or saloons to be on two new steamers then building by B. B. & Co., "for the season of navigation of 1853, commencing on the first day of May in said year." *Held* that the defendant undertook that the plaintiff should have and enjoy the use of the bars and saloons for the "*season* of navigation;" not simply for the time the boats should be navigated or employed in transporting passengers.

And the plaintiff having been deprived of the possession during a portion of the season, by the delay of the defendant in getting the saloons fitted up,

McCleary *v.* Edwards.

and by the steamers being laid up a part of the summer, it was *further held* that the plaintiff had a good cause of action for the breach of the agreement. And that the proper measure of damages was the amount of rent paid for the use of the saloons while the plaintiff was deprived of their use, at the rates specified in the leases, with interest on the same from the close of navigation in 1853.

THE defendant executed contracts as follows: "For and in consideration of the sum of $2000 in cash to me paid by Richard McCleary, the receipt of which I hereby acknowledge, I hereby lease to said McCleary the two bars or saloons on the steamers Southern Michigan and Northern Indiana, for the season of navigation of 1853. Dated Buffalo, November 27, 1852."

"Whereas Richard McCleary, of the city of Buffalo, has this day executed and delivered to me his promissory note, falling due and payable on the first day of March, 1853, for the sum of $2000, therefore I hereby agree to lease unto said McCleary the two bars or saloons to be on the two new steamers now building by Messrs. Bidwell, Banta & Co. (for R. V. Roberts of New York,) for the season of navigation of 1853, commencing on the first day of May in said year. Dated Buffalo, Nov. 27, 1852."

This action was brought for a breach of these contracts. The plaintiff offered in evidence the deposition of a witness, taken upon commission. The return to the commission was indorsed upon the interrogatories, which, and the deposition of the witness, were annexed and secured to the commission. The defendant objected to the reading of the commission. The objection was overruled, and the defendant excepted

The plaintiff proved that the business for which the saloons were adapted was selling fruits, cigars, liquors and other things, to persons on the boats; that the boats were laid up a part of the season of navigation of 1853, and that during such time the saloons and bars could not be used and occupied as saloons and bars. He also proved that the new boats were not finished until the 7th and 8th of July, and that the saloons, on the Southern Michigan and Northern In-

diana, could not be occupied until the 20th of April, 1853, when the boats were fitted out. The boats were all laid up, by the masters and owners, in the month of October, 1853, and all persons were discharged therefrom, and sent ashore; and no one was permitted, after that time, to occupy the saloons. He also proved that the rent, at the rate specified in the leases, for the time the plaintiff was kept out of possession, amounted to $1763, and that the use of the saloons for the season was worth $2400 each; that the season of navigation commenced early in April and ended Nov. 30. That the boats were laid up some days during the summer. The evidence being closed, the defendant's counsel requested certain instructions to be given to the jury. 1. That the plaintiff was not entitled to recover upon the facts proved. 2. That the contract contemplated the letting of the use of the bars and saloons only while the boats were engaged in the business of navigation. 3. That the plaintiff, upon the facts proved, was entitled to recover nominal damages only. The court denied each of these requests, and the defendant excepted.

The court instructed the jury that the plaintiff was entitled to recover, as damages, the amount of rent paid for the use of the saloons while he was deprived of their use, at the rates specified in the leases, with interest on the same from the close of navigation for the season of 1853. The defendant excepted. The verdict was according to the instruction. Judgment followed, and the defendant appealed to the general term.

*Ch. Daniels,* for the plaintiff.

*John Ganson,* for the defendant.

*By the Court,* MARVIN, J. The objection to the admission of the deposition was not well taken. *Hurd* v. *Pendrigh,* (2 *Hill,* 502,) is in point, and decisive. This case is not referred to in the decision in *Fleming* v. *Hollenback,* (7 *Barb.* 271,) nor are the cases alike. In the latter case the commissioners

made their return on a separate piece of paper which was attached to the back of the answers to the interrogatories.

The difficulties in this case relate to the right to recover, and the measure of damages. The defendant insists that the plaintiff has no right to recover any damages, and if wrong in this position, then that the plaintiff could only recover nominal damages. The plaintiff puts his case upon principles relating to the eviction of a tenant; and I infer that the learned justice so regarded the case, as he directed the jury to find for damages the amount of rent paid for the use of the saloons while he was deprived of their use, at the rates specified in the leases, with interest, &c.

If the plaintiff was entitled to recover for the time he did not use the saloons, I think the instruction as to the measure of damages was quite as favorable to the defendant as he had a right to ask; as the plaintiff proved that the most valuable portion of the season was at the time the boats were laid up, and also that the use of the saloons was worth, each, $2400 for the season. The question then is, was the plaintiff entitled to recover damages for the time he was deprived of the use of the bars and saloons? The answer to this question must depend mainly upon the construction that shall be given to the contracts.

The defendant leased to the plaintiff the bars and saloons on the steamers Southern Michigan and Northern Indiana, *for the season of navigation,* receiving the rent in advance. It does not appear from the case whether the defendant owned these steamers, or had any interest in them; and perhaps this is not material. The contract is silent as to what is to be done with the boats—whether they are to be employed or not; unless it may be inferred that they were to be employed in navigation from the language used in reference to the *term,* viz: "for the season of navigation." There can, however, be no doubt that the parties contemplated that the boats were to be used in performing trips upon the lake or lakes and in carrying passengers, "for the season of navigation." The proof

shows that the season of navigation, that year, commenced early in April, and that the steamers Southern Michigan and Northern Indiana were being fitted out until the 20th day of April, and the plaintiff could not use the bars and saloons until that time. The second contract, relating to the boats then being built, is specific as to the time when the term is to commence. The leasing was " for the season of navigation of 1853, commencing on the first day of May in that year." These boats were not fitted up and made ready for navigation until the 7th and 8th of July, and the plaintiff, of course, could have no use of the bars and saloons until that time.

The boats were laid up early in October, by their *masters and owners*, and the plaintiff was, by them, deprived of the use of the saloons and bars. He was evicted. It does not appear that the defendant had any connection with the act of laying up the boats or evicting the plaintiff. What relation existed between the defendant and the masters and owners does not appear. It is not denied that the masters and owners had the right to lay up the boats ; and the question is not raised as to their right to exclude the plaintiff from the bars and saloons. If so, then the plaintiff was evicted by a title paramount.

The defendant's counsel, referring to the evidence that the saloons or bars were intended for the business of selling fruits, cigars, liquors and other things to passengers and others connected with the boat, argues that the objects and purposes of the leases must be limited to this use of the bars, and the rights of the parties be passed upon with reference to such use. That there was no obligation, on the part of the defendant to run the boats, in order that the plaintiff might keep bars thereon. The right contracted for was a mere incident to the use of the boat.

As I have already said, I have no doubt the parties contemplated that the boats would be used in transporting passengers upon the lakes. Still, as the counsel says, the agreement is silent upon that question. The defendant did not agree that

the boats should be so employed. But he did lease to the plaintiff the bars and saloons "for the season of navigation." The *term* is clear and specific. Assume that the defendant did not undertake that the boats should be employed, and that the plaintiff therefore was to run the risk of the boats laying up, a part or portion or all of the season. The defendant did undertake that the plaintiff should have and enjoy the use of the bars and saloons "for the *season* of navigation;" not simply for the time the boats should be navigated or employed in transporting passengers. The use of the saloons and bars might be of little value while the boats were laid up, but by the contract I think the defendant agreed that the plaintiff should have them during the whole season of navigation. The plaintiff was evicted, and I have come to the conclusion that he had a good cause of action for the breach of the agreement; and that the proper rule for the measure of the damages was given to the jury.

I think the judgment should be affirmed.

[GENESEE GENERAL TERM. May 17, 1858. *Grover, Marvin* and *Davis,* Justices.]