JESS K. COULTER v. ERNEST V. NORTON AND HENRY HAYDEN.

| 100 | 389 |
| 137 | 521 |
| 100 | 389 |
| 148 | 240 |

*Landlord and tenant—Covenants—Constructive eviction—Damages —Evidence.*

The lessees of an hotel sublet the cigar and news room, with the appurtenances thereto, including the right of entrance to and from the hotel rooms, for the purpose of carrying on the business of cigar selling and news dealing. The lease contained a grant of the entire cigar privilege of the hotel, and a covenant for the peaceable and quiet enjoyment of the demised premises. The cigar room opened into the hotel office, and also onto the main street in front of the hotel. After making the lease a third party succeeded to an interest in the general lease of the hotel, and he and one of the original lessees thereafter ran the hotel as copartners, and the sublessee attorned to them. The new firm, finding the hotel business unprofitable, abandoned the ground floor, on which the hotel office was located, and used the upstairs portion of the building for sleeping rooms in connection with another hotel. The sublessee thereupon abandoned the premises sublet to him, and brought suit against the firm to recover damages, claiming a constructive eviction, and an implied covenant to maintain the hotel. And in affirming a judgment in favor of the plaintiff, it is held:

*a*—That the claim that the case falls within How. Stat. § 5655, which provides that "no covenant shall be implied in any conveyance of real estate, whether such conveyance contain special covenants or not," is without force; that there is no obscurity or uncertainty in the terms of the lease, and there can be no doubt that, on the one hand, the plaintiff understood that he was securing the room with the door opening into the hotel office, and was to have the cigar privilege with the door opening into the hotel, nor, on the other hand, that his lessors understood that they were leasing the same thing; and that it is not a case of implied covenant, there being an express covenant for the peaceable and quiet enjoyment of the thing leased.

*b*—That the closing of the hotel was such an interference in

the plaintiff's use of the premises as to amount to an eviction.[1]

c—That the defendant who became an assignee of an interest in the original hotel lease, and to whom plaintiff attorned, and who himself assisted in closing the hotel, thus working an eviction, is liable therefor.

d—That the measure of plaintiff's damages is the actual value of the unexpired term of his lease, less the rent reserved.

e—That evidence relative to the falling off in the plaintiff's trade by reason of the closing of the hotel was not wholly irrelevant to the question of the value of the use of the premises leased to him.

Error to Jackson. (Lane, J., presiding.) Argued January 31, 1894. Decided May 22, 1894.

*Assumpsit.* Defendants bring error. Affirmed. The facts are stated in the opinion.

*Wilson & Cobb,* for appellants.

*Barkworth & Blair,* for plaintiff.

MONTGOMERY, J. In December, 1891, Norton, Griffith & Co. were lessees of the Hurd House property at Jackson, and were making extensive alterations and improvements preparatory to reopening the hotel. The improvements were completed about February 10, 1892, and the house opened for business. In December, 1891, said lessees sublet to plaintiff " the cigar and news room and stand in the hotel building now known as the 'New Hurd,' being the first room immediately west of the main entrance to said hotel, and the appurtenances thereto, and *the right of entrance to and from the hotel rooms,* for the purpose of carrying on said business of cigar selling and news dealing, for the term of five years; said term to commence as soon as said hotel building and said room are

[1] The effect of partial eviction upon liability for rent is considered in a review of numerous cases in a note to *Edmison v. Lowry,* 17 L. R. A. 275.

ready for occupancy, and said hotel is in actual occupancy and operation." The lease contained the further provision that—

" The said parties of the first part grant herewith the entire cigar privilege of the New Hurd to said second party, and agree to and with the said second party that they will sell no cigars in said hotel, or the bar connected therewith, excepting those bought of the said second party, for which they shall pay said second party at the rate of $83 per thousand, said cigars to be of a quality selling at wholesale at regular market price of not less than $55 per thousand; * * * and the said second party does hereby covenant and promise * * * that he will at his own expense, during the continuance of this lease, keep the said premises, and every part thereof, in as good repair, and, at the expiration of the term, yield and deliver up the same in like condition, as when taken, reasonable use and wear thereof and damage by the elements excepted."

There are no other covenants in the lease which are material. A sketch of the premises is given on next page.

After the making of this lease, Norton and Hayden, the defendants, became owners of the general lease of the Hurd House, and landlords of plaintiff. In November, 1892, the hotel proprietors, finding the business unprofitable, abandoned this floor, and used the upstairs portion for sleeping rooms in connection with another hotel across the street. Plaintiff thereupon abandoned the premises leased by him, and brings suit for damages, claiming a constructive eviction, and an implied covenant to maintain the hotel.

1. It is claimed that this case falls within section 5655, How. Stat., which provides that "no covenant shall be implied in any conveyance of real estate, whether such conveyance contain special covenants or not." We think this objection without force. The question here is, what was leased? and we think the answer to this question very clear. There is no obscurity or uncertainty in the terms

of the lease. It is the cigar and news room in the New Hurd House, the appurtenances thereto, and the right of entrance to and from the hotel rooms; also, the entire cigar privilege of the New Hurd. There can be no doubt that, on the one hand, the plaintiff understood that he was getting the room with the door opening into the Hurd Hotel office, and was to have the cigar privilege with

the door opening into the hotel, nor, on the other hand, that the lessors understood that they were leasing the same thing. *Denison v. Ford*, 7 Daly, 384. It is not a case of implied covenant. There was an express covenant for the peaceable and quiet enjoyment of the thing leased.

2. Nor do we think there can be any doubt that the closing of the hotel was such an interference in the use

of the premises as to amount to an eviction. Wood, Landl. & Ten. (2d ed.) 1101; *Rhodes v. Bullard,* 7 East, 116; 3 Suth. Dam. 117; *Conlon v. McGraw,* 66 Mich. 194; *Denison v. Ford, supra.*

3. Was the defendant Hayden liable for the eviction? We think, under the circumstances of this case, that he was. He became assignee of an interest in the lease of the Hurd House. Plaintiff attorned to him, and he himself assisted in closing the hotel, thus working an eviction.

4. The circuit judge gave the jury the correct rule of damages, recovery being confined to the actual value of the unexpired term, less the rent reserved.

We do not think the introduction of testimony relative to the falling off in trade was wholly irrelevant to the question of the value of the use of the premises, and are satisfied that no error was committed to the prejudice of the defendants.

The judgment will be. affirmed, with costs.

The other Justices concurred.